In re HOSTER STEEL CORP.

No. 8837.

United States District Court
W. D. Oklahoma.

Jan. 16, 1953.

Joseph G. Rucks, Oklahoma City, Okl., for trustee.

McClelland, Kneeland, Bailey & McClelland, Oklahoma City, Okl., for the general creditors.

L. Karlton Mosteller, Oklahoma City, Okl., for the debtor.

Gilliland, Withington & Shirk, Oklahoma City, Okl., and Watts, Ross, Looney & Smith, Oklahoma City, Okl., for Robberson Steel Co.

WALLACE, District Judge.

Upon petitions of Robberson Steel Company, McCormick Steel Company and Wyatt Manufacturing Company, and pursuant to the Amended Plan of Reorganization of the Hoster Steel Company, a hearing was conducted to determine whether or not the petitioning steel companies are in a position of priority in relation to the general creditors. This hearing, together with subsequent briefs and pleadings of the parties, proceeded generally on the theory that the Trustee [1] had within his control a quantity of ingots over and above that number upon which field warehouse receipts had been issued.[2]

The Amended Plan for Reorganization provided that the undelivered stock of ingots could be converted or fabricated by the Trustee and sold, and that by such a course of action an accurate inventory could be taken.[3] The Amended Plan further provided:

"\* \* \* (2) An early court determination of the rights and claims of the above claimants shall be sought, and their claims disposed of as follows:

"(A) If claimants should be held to have no title or claim to the ingots, they shall be General Creditors in the sums set opposite their respective names.[4]

"(B) If claimants should prevail in such determination, trustee shall issue preferred Trust Certificates in amounts above set opposite their respective names, free and clear of all claims of creditors, costs and expenses of trustee, payable 5% per month, beginning six months from date of confirmation of this Plan, with interest of 6% per annum from date of issuance, payable monthly."

Excellent briefs were submitted by all interested parties regarding the question of whether either a "constructive delivery" had taken place or an "equitable lien" had been perfected on the ingots presumably in existence and under the control of the Trustee.

By means of the inventory, previously mentioned, it now has been established that no ingots passed to the Trustee at the time of the bankruptcy petition over and above that number subject to field warehouse receipts and that in fact there is not a sufficient number of ingots to respond to the warehouse receipts which were issued.

It is the opinion of the court that even if the inventory had disclosed such surplus ingots that the three petitioning steel companies would not be in a position of preference of priority.

A "constructive delivery" did not take place inasmuch as there is no evidence of a setting aside or an appropriation in the hands of the seller for the buyers.

Although the doctrine of "equitable lien" goes very far to protect a seller who has paid the purchase price on ordered goods, to the court's knowledge this

---

1. James B. Kite, Trustee, appointed by Order of Court dated March 20, 1952.

2. Warehouse receipts issued prior to November 1, 1951, by Lawrence Warehouse Company, for ingots stored by Lawrence Warehouse Company on property leased from Hoster Steel Company. See Reporter's transcript of Stipulation, Sept. 8, 1952.

3. See Amended Plan for Reorganization, p. 4.

4. " Name

| Name | Pounds of Steel | Amount |
|------|-----------------|--------|
| (1) Robberson Steel | 663,185 | $33,159.25 |
| (2) Wyatt Manufacturing Company | 105,110 | 5,255.50 |
| (3) McCormick Steel Company | 296,221 | 14,811.05" |

See Amended Plan, p. 4.

doctrine has never been extended to where there is no specific setting aside or identifying of goods where a manufacturer is turning out goods of a certain characteristic and description for several different buyers. It is a fundamental concept regarding equitable liens that the person desiring to show such perfected right be able to describe with particularity the goods upon which the lien is to attach.

A fortiori, now that it has been established that all ingots which passed to the Trustee were covered by warehouse receipts, the petitioners enjoy no position of preference. The court believes that the part of Article VI of the Amended Plan for Reorganization which specifies that,

> "(A) If claimants should be held to have no title or claims to the ingots, they shall be General Creditors in the sums · set opposite · their respective names."

points to the correct answer. To be entitled to a priority or preference as a secured creditor there must be collateral in the hands of the Trustee.

Even if it be true that petitioners obtained an "equitable lien" on ingots during November of 1951,[5] inasmuch as these ingots never passed into the possession of the Trustee, no priority would inure to the benefit of petitioners.

It is the court's opinion that petitioners are general creditors.

---

5. See Reporter's Transcript of Stipulation, Sept. 8, 1952.